## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STILLWATER MEDICAL CENTER AUTHORITY, an Oklahoma public trust hospital,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. CIV-19-954-G** |
| **WINCHESTER GLOBAL TRUST COMPANY LIMITED, a Bermuda limited company, et al.,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER

Now before the Court is the Motion to Dismiss (Doc. No. 12) filed by Defendant

Winchester Global Trust Company Limited ("Winchester"). Winchester seeks dismissal

under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has

responded in opposition (Doc. No. 14) and Winchester has replied (Doc. No. 17). Having

reviewed the parties' submissions, the Court determines that it lacks personal jurisdiction

over Winchester.

I.      BACKGROUND

This matter involves an alleged funding deficiency of the Bermuda Purchasing Trust

("BPT"),[1] of which Winchester is the trustee and Defendant Accent Benefit

Administrators, Inc. ("Accent") is the administrator. *See* Compl. (Doc. No. 1) ¶¶ 6-8. In

its pleading, Plaintiff alleges that it is an Oklahoma public trust hospital located in

---

[1] The Trust is also referred to in the parties' briefing as the Medical Benefits Purpose Trust.

Stillwater, Oklahoma, and is a medical provider in the BPT's provider network. *See id.* ¶¶ 1, 6. Plaintiff alleges that both Winchester and Accent "were responsible for ensuring that the Trust was properly funded and that claims for medical benefits were timely processed and paid." *Id.* ¶ 7. Plaintiff further alleges that in November and December of 2018, premiums tendered by participating employers were not deposited in the BPT account, which resulted in insufficient funding of the BPT for the timely processing and payment of claims. *See id.* ¶ 8. According to Plaintiff, the unpaid claims amounted to $182,116.11 for services provided by Plaintiff and $609,889.09 for services provided by other network providers. *See id.* ¶ 11.

Following an unsuccessful demand by Plaintiff that Defendants correct the funding error and pay the claims, Plaintiff used its own funds to pay the claims for services provided by the other network providers in order "to end the delay associated with the failure to process and pay the [c]laims under the Trust." *Id.* ¶¶ 9-10. Plaintiff now seeks reimbursement both for the unpaid claims for services it provided and for the amount it paid the other network providers. *Id.* at 4. Plaintiff brings claims of tortious interference with business relationship and unjust enrichment. *Id.* ¶ 13-21.

II.    STANDARD GOVERNING PERSONAL JURISDICTION

When the Court's jurisdiction over a defendant is contested, the plaintiff bears the burden of proving that personal jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). In the preliminary stages of litigation, however, "the plaintiff's burden is light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). Where,

as here, the court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1056-57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). For purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted as true but only to the extent they are uncontroverted by the defendant's affidavits. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (internal quotation marks omitted).

To establish personal jurisdiction over a nonresident in a diversity action, a plaintiff "must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the Constitution. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416-17 (10th Cir. 1988); *see* Okla. Stat. tit. 12, § 2004(F). Accordingly, the Court's inquiry is reduced to a single question: whether the Court's exercise of jurisdiction over Defendant Winchester is consistent with constitutional due process. *See Shrader*, 633 F.3d at 1239; *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

The due process standard requires that the defendant "purposefully established minimum contacts within the forum state" and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Dental Dynamics, LLC*, 946 F.3d at 1229 (internal quotation marks omitted). The "minimum contacts" standard may be satisfied by showing either general or specific jurisdiction. *See OMI Holdings, Inc.*, 149 F.3d at 1090-91. In this case, the only basis of jurisdiction over Defendant Winchester reasonably implicated by the factual allegations of Plaintiff's pleading is specific jurisdiction.

Specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The first element can take various forms. *Id.* In tort-based actions such as this, "'purposeful direction' has three elements: '(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013) (omissions in original) (quoting *Dudnikov*, 514 F.3d at 1072).

III.   DISCUSSION

Plaintiff and Winchester each submitted an affidavit in support of their jurisdictional arguments. Winchester's affidavit states that Winchester is "a Bermuda limited company with its principal office located in Hamilton, Bermuda," that Accent is a Georgia

corporation located in Kennesaw, Georgia, and that Winchester has neither done business

in nor solicited business from Oklahoma.  Halliday Aff. (Doc. No. 12-1) ¶¶ 3-6.  The

affidavit further describes the purpose of the BPT and the various relationships of

associated entities:

> [Accent] approached Winchester to establish a [BPT] for the purpose of facilitating certain Voluntary Employee Beneficiary Association Trusts ("VEBA Trusts") in the United States.  [Accent's] plan was to have US-based employers ("Sponsors") form VEBA Trusts, for the purpose of providing health benefits to the employees and families ("Covered Persons") of those Sponsors. . . . VEBA Trusts are provided for by the Internal Revenue Code (26 U.S.C.A. § 501(c)(9)) as a means of providing health and other employee benefits in a cooperative and cost-effective way.  Some VEBA Trusts accomplish this by self-insuring and utilizing a special purpose trust (often located off-shore) to consolidate risk among several VEBA Trusts by having the special purpose trust purchase large insurance policies to cover any losses under the VEBA Trust's self-insurance plan.  In this respect the policies purchased by the special purpose trust serve the function of reinsurance for the VEBA Trusts.  The VEBA Trusts have no interest in either the special purpose trust or the policies it purchases, but rather they have a contractual right to participate in the Trust by receiving policy proceeds as necessary to fund health claims by the Covered Persons.
>
> Under [Accent's] plan, the offshore trust would purchase two large insurance policies in Bermuda ("Policies") . . . .
>
> The special purpose trust enters into Joinder Agreements with, and issues Participation Trust Certificates of participation to, the various VEBA Trusts, which certify that the VEBA Trusts have the right to receive a portion of the benefits paid under the Policies to reimburse them for benefits paid out to the Covered Persons who are members of that VEBA Trust.  However, no Covered Person or VEBA Trust is an insured or has any rights under the Policies.
>
> [Accent's] role is that of Third Party Administrator.  The Covered Persons pay premiums to their VEBA Trusts.  In return, the Covered Persons receive health and other benefits on a self-insured basis, backed up by the VEBA Trust's participation in the special purpose trust.  [Accent] is responsible for the collection of these premiums and the payment of claims by the relevant VEBA Trust. [Accent] is also responsible for tendering each VEBA Trust's proportionate share of the premium on the Policies to the special purpose trust . . . .
> . . . .

> Upon being approached by [Accent], Winchester agreed to be the trustee of the special purpose trust and formed the [BPT], a Trust organized under the laws of Bermuda . . . .
>
> [Accent] then set about recruiting employers to be sponsors of VEBA Trusts.  Two of those Sponsors were Stillwater Medical Collaborative Care and Stillwater Medical Center (collectively the "Stillwater Sponsors"); both apparently formed VEBA Trusts ("Stillwater VEBA Trusts") which signed Joinder Agreements and were issued Trust Certificates of participation by [BPT] . . . .
>
> [Accent] commenced both collecting premiums from, and administering and paying claims on behalf of, the Stillwater VEBA Trusts.
>
> When [Accent] made a claim to proceeds from [BPT], those proceeds were paid to [Accent] for distribution to the Stillwater VEBA Trusts.  No funds were ever transferred between [BPT] and the Stillwater Sponsors, the Stillwater VEBA Trusts, or any Covered Person.
>
> Neither Winchester nor the licensed insurance manager for the Trust (which handled payments on Winchester's behalf) ever had any communications with the Stillwater Sponsors, the Stillwater VEBA Trusts, or any Covered Person.
>
> . . . . [BPT] has no outstanding unpaid claims associated with the Stillwater VEBA Trusts and it holds no outstanding premiums from the Stillwater VEBA Trusts.  In other words, [BPT] has neither denied nor failed to fund any claims related to the Stillwater VEBA Trusts.

*Id.* ¶¶ 8-18.

Plaintiff's affidavit does not directly contradict this information, other than to note correspondence between Plaintiff and Winchester regarding the funding issue.  *See* Lovelace Aff. (Doc. No. 14-1) ¶ 11.  The affidavit states that Winchester purchased insurance policies to fund the BPT and that Oklahoma employer sponsors paid the premium shares.  *See id.* ¶ 5.  Plaintiff affirms that "Accent coordinated premium payment to Winchester and claim payment by Winchester," but contends that both Winchester and Accent were "responsible for ensuring that the Trust was properly funded and that claims for medical benefits were timely processed and paid."  *Id.* ¶¶ 6-7.

Where, as here, the Court must consider whether personal jurisdiction exists over a defendant trustee, it is the "acts of the trustee," rather than the domicile of the beneficiaries, that are determinative. *Hanson v. Denckla*, 357 U.S. 235, 251-54 (1958) (finding that though "the trustee remitted the trust income to [the settlor] in [Florida]," the defendant trust company was not subject to personal jurisdiction in that state because it did not solicit business, hold offices, or transact business there). Accordingly, Plaintiff cannot rely on the residence of employer sponsors or network providers to establish the existence of personal jurisdiction over Winchester. *See Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) ("[I]t is not enough to prove that a defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state. Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." (citations omitted)).

Insofar as Plaintiff seeks to rely on the Joinder Agreements and Participation Trust Certificates between BPT and the VEBA Trusts, the argument is unavailing. These documents reflect that the VEBA Trusts sought to participate in the BPT, not that Winchester solicited their participation. *See Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Further, the act complained of—the alleged failure to "ensure the [BPT] was funded"—did not occur in Oklahoma, and nothing in Plaintiff's affidavit suggests that this alleged failure constitutes an "intentional action" on the part of Winchester that was "expressly aimed at Oklahoma" or otherwise

demonstrates that the cause of action "arises out of an act done or transaction consummated in the forum State."  *Newsome*, 722 F.3d at 1264-65; *Hanson*, 357 U.S. at 251.

## CONCLUSION

For the reasons stated herein, Defendant Winchester Global Trust Company Limited's Motion to Dismiss (Doc. No. 12) is GRANTED.  Winchester is dismissed without prejudice from this action.  A separate judgment shall be entered following disposition of Plaintiff's pending request for default judgment against Defendant Accent Benefit Administrators, Inc.

IT IS SO ORDERED this 30th day of September, 2021.

CHARLES B. GOODWIN
United States District Judge